UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| IN RE CENTURYLINK, INC. SHAREHOLDER DERIVATIVE ACTION )<br>)<br>)<br>This Document Relates to: )<br>   Member Case No. 3:14-cv-658-RGJ-JDK )<br>   Member Case No. 3:14-cv-659-RGJ-JDK )<br>)<br>) | Master Case No. 3:13-cv-02318-RGJ-JDK<br>(Consolidated with 3:13-cv-02983-RGJ-JDK)<br>(Consolidated with 3:14-cv-00658-RGJ-JDK)<br>(Consolidated with 3:14-cv-00659-RGJ-JDK) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED SECURITIES CLASS ACTION COMPLAINT**

**Table of Contents**

                                              **Page**

ARGUMENT ................................................................................................................................ 1

I.     Plaintiffs Fail to Adequately Plead that Defendants' Statements About the Company's Dividend Were False ........................................................................................ 1

II.    Plaintiffs Fail to Plead a Strong Inference of Scienter as to the Dividend Cut .................. 5

III.   Most of Defendants' Statements About the Dividend are Not Actionable ........................ 7

IV.   Plaintiffs' Internal Controls Claims are Entirely Conclusory ............................................ 9

CONCLUSION ........................................................................................................................... 10

## Table of Authorities

 **Page(s)**

**Cases**

*Barrie v. Intervoice-Brite, Inc.*,
 397 F.3d 249 (5th Cir. 2005) ...................................................................................................1, 2

*Catogas v. Cyberonics, Inc.*,
 292 F. App'x 311 (5th Cir. 2008) ...............................................................................................10

*In re Clorox Co. Sec. Litig.*,
 238 F. Supp. 2d 1139 (N.D. Cal. 2002) .......................................................................................8

*Dawes v. Imperial Sugar Co.*,
 975 F. Supp. 2d 666, 710 (S.D. Tex. 2013) ...............................................................................10

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
 353 F.3d 1125 (9th Cir. 2004) .....................................................................................................8

*Fecht v. Price Co.*,
 70 F.3d 1078 (9th Cir. 1995) .......................................................................................................7

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
 565 F.3d 200 (5th Cir. 2009) .......................................................................................................4

*Greenberg v. Crossroads Sys., Inc.*,
 364 F.3d 657 (5th Cir. 2004) .....................................................................................................10

*Greenhouse v. MCG Capital Corp.*,
 392 F.3d 650 (4th Cir. 2004) .......................................................................................................3

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
 537 F.3d 527 (5th Cir. 2008) .......................................................................................................5

*Keane v. Fox Television Stations, Inc.*,
 297 F. Supp. 2d 921 (S.D. Tex. 2004) ........................................................................................2

*Lormand v. U.S. Unwired, Inc.*,
 565 F.3d 228 (5th Cir. 2009) ..................................................................................................7, 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
 ---F.3d ----, 2014 WL 3451566 (9th Cir. July 16, 2014) ............................................................8

*Schiller v. Physicians Res. Grp., Inc.*,
 2002 WL 318441 (N.D. Tex. Feb. 22, 2002)..............................................................................4

*SEC v. Janvey*,
 404 F. App'x 912 (5th Cir. 2010) ..........................................................................................5, 7

## Table of Authorities

**Page(s)**

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) ..................................................................................................7

*Spitzberg v. Houston Am. Energy Corp.*,
   2014 WL 3442515 (5th Cir. July 15, 2014)............................................................................5

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006)....................................................................................................7

*Tarcia v. McDermott, Int'l, Inc.*,
   2000 WL 1346895 (E.D. La. Sept. 19, 2000) .........................................................................4

*Tarver v. Safety Nat. Cas. Corp.*,
   2009 WL 700691 (W.D. La. Mar. 17, 2009) ..................................................................3, 6, 10

**Other Authorities**

17 C.F.R. § 240 10b5-1...................................................................................................................6

According to Plaintiffs, the gravamen of their case is that CenturyLink could "not sustain" its dividend and, as a result, "Defendants actively hid crucial facts regarding the amount of the Company's dividend" until they were forced to disclose a dividend cut for the 2013 fiscal year. (Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Opp.") at 1.) Under the PSLRA's heightened pleading standards for securities fraud claims, however, Plaintiffs cannot overcome a motion to dismiss simply by insisting that their version of events is correct. Instead, Plaintiffs are required to provide this Court with particularized *facts* (a) establishing why the alleged misstatements were misleading *and* (b) creating a strong inference that each defendant acted with an intent to deceive or severe recklessness in making those alleged misstatements. Not only do Plaintiffs fail to meet their pleading burden, as the Opposition confirms, but based on the indisputable facts properly considered on a motion to dismiss, it is clear that CenturyLink both *could have sustained* its dividend and *did fully disclose* to investors the factors that eventually led to its decision to cut the dividend. If that were not enough, Plaintiffs also fail to demonstrate that many of the alleged misstatements are even actionable (because they are forward-looking predictions about the Company's dividend) or that the alleged misstatements related to the Company's internal controls could possibly have caused Plaintiffs any loss. In sum, the Complaint falls far short of adequately pleading *any* securities fraud claim against *any* Defendant and the Court should dismiss it with prejudice.

## ARGUMENT

### I. Plaintiffs Fail to Adequately Plead that Defendants' Statements About the Company's Dividend Were False

Plaintiffs' arguments concerning falsity are deficient on their face. *First*, Plaintiffs assert that any "fact-based arguments made by Defendants are 'insufficient to support a motion to dismiss.'" (Opp. at 9.) What Defendants have done, however, is properly provide the Court with additional material that, under controlling law, the Court may consider in deciding this motion. (*See* Defs.' Mot. to Dismiss First Am. Class Action Compl. ("Mem.") at 3 n.2.) The Fifth Circuit case quoted by Plaintiffs does not hold otherwise. *See Barrie v. Intervoice-Brite,*

*Inc.*, 397 F.3d 249, 257 (5th Cir. 2005).  In *Barrie*, the defendants argued that they had correctly applied a particular accounting provision, while the plaintiffs countered with *an expert report* concluding that the company's accounting was erroneous.  *Id.*  The court held that "[b]ecause the accounting questions in this case are disputed, dismissal was not appropriate . . . such fact-bound defenses cannot succeed at the pleading stage[.]"  *Id.*  In contrast to *Barrie*, Defendants here do not contest any of Plaintiffs' well-plead factual assertions.  Instead, Defendants use materials properly before this Court to demonstrate the ways in which Plaintiffs improperly rely on "conclusory allegations, unwarranted deductions, or legal conclusions."  *Id.*; *see also Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004) ("courts are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint") (internal quotations omitted).

*Second*, Plaintiffs do not dispute that the net effect of CenturyLink's new capital allocation strategy (the reduced dividend and share buybacks) was to return *more* money to investors in 2013.  (*See* Opp. at 9.)  They claim this is "irrelevant," however, because "share buybacks largely benefit corporations by artificially increasing earnings-per-share."  (*Id.*)  Putting aside that Plaintiffs offer no authority for this assertion, it is a complete *non sequitur*.  The Complaint alleges that the dividend "needed" to be cut because the Company did not have a sufficient cash flow to make the dividend payments.  (Compl. ¶ 64(e), (g).)  As it turns out, the Company obviously *did* have sufficient cash flow in 2013 to continue paying its dividend at the 2012 level (because the Company returned even more cash in 2013 than in 2012), which disproves Plaintiffs' conclusory allegations about the supposed "need" to cut the dividend.

*Third*, Plaintiffs present a list of "facts" supposedly demonstrating that Defendants "deliberately concealed information regarding the Company's decision to cut the dividend."  (Opp. at 8-9.)  Virtually every item on the list is drawn from CenturyLink's public disclosures made during the alleged class period.  (*See* Mem. at 3-8, 17-18.)  Given that the possibility of a credit ratings downgrade, the effect of the expiration of NOLs on the company's tax liabilities and cash position, and the sales by insiders of their CenturyLink shares were all

prominently set forth in the Company's SEC filings, Plaintiffs fail to explain how the *possibility* of a dividend cut was "concealed" from investors. Indeed, CenturyLink specifically disclosed that it was considering *all* its options, including the dividend size, in its cash allocation decisions for 2013 and beyond. (Mem. at 6.) Plaintiffs cannot engage in ostrich-like behavior and assert that as a basis for a fraud claim. *See Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004) ("a 'reasonable investor' is neither an ostrich, hiding her head in the sand from relevant information, nor a child, unable to understand the facts and risks of investing").

*Fourth*, Plaintiffs insist that CenturyLink's change in capital allocation strategy was an "attempt to meet the mandates of the credit rating agencies" and that the Company's 2013 budget (and presumably the dividend cut) must have been discussed with the credit ratings agencies in 2012. (Opp. at 9-10.) The Complaint provides no factual support for these assertions, because none exists. CenturyLink told the market when it announced the new capital allocation strategy that its actions would lead to a downgrade in the Company's credit ratings, which is exactly what happened. (*See* Mem. at 14.) Plaintiffs obviously cannot establish that the Company was trying to "meet the mandates of the credit ratings agencies" when the Company took deliberate steps that it knew would lead to a downgrade. Moreover, the Complaint does not allege that the Company's budget and dividend were discussed in the meetings with the credit ratings agencies in the fall of 2012. Plaintiffs cannot use rank speculation in their Opposition to fill in gaps in their Complaint. (Mem. at 10.) *See, e.g.*, *Tarver v. Safety Nat. Cas. Corp.*, 2009 WL 700691, at *2 (W.D. La. Mar. 17, 2009) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (citations omitted)).

*Fifth*, Plaintiffs repeatedly assert that Mr. Post "confessed" to "failing to be honest with the market regarding the dividend cut" when he later supposedly told employees that he should have "prepped the market ahead of the dividend cut as opposed to announcing the cut." (Opp. at 17, 10-11.) Mr. Post's alleged statement, however, offers no support for Plaintiffs' fraud claims. According to the Complaint, the last misrepresentation about the dividend was made on November 8, 2012. (Compl. ¶ 63.) Nothing in Mr. Post's February 2013 statement suggests that

3

the decision to cut CenturyLink's dividend was made prior to November 8, 2012. Without this temporal component, it is well-established in this Circuit that the supposed admission cannot create any inference of falsity or scienter.[1]

*Finally*, Plaintiffs take issue with the cases cited by Defendants showing that courts routinely dismiss claims alleging that a company failed to disclose an upcoming change in dividend policy. (Opp. at 11-12.) Plaintiffs assert the decisions are inapposite because, unlike the companies in those cases, CenturyLink guaranteed that it would pay the same dividend in 2013 as it had in 2012. (*Id.*) To make that argument, however, Plaintiffs are forced to rely on creative editing and willful blindness. The Opposition asserts that the Company told investors it would "continue [its] annual dividend of $2.90 per common share." (Opp. at 11.) What the Company actually said, however, is "[w]e *currently expect* to continue our current annual dividend of $2.90 per common share, *subject to our board's discretion*." (Compl. ¶¶ 58, 63 (emphasis added).) Not only is that statement self-evidently *not* a guarantee, but CenturyLink also expressly informed the market that it could not "make any commitments" as to the 2013 dividend and it was considering all of its options as to its cash allocation, including the dividend size. (Mem. at 5-6.) In other words, just as in the Fifth Circuit's decision in *Flaherty*, CenturyLink expressly warned investors that the dividend was "under review" before changing it. *See Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208-12 (5th Cir. 2009) (fact that defendants announced dividend policy was under review, and board decision to change dividend took place after public statements were made, amounted to "plausible nonculpable explanation" of defendants' actions).

---

[1] *See, e.g., Schiller v. Physicians Res. Grp., Inc.*, 2002 WL 318441, at *14 (N.D. Tex. Feb. 26, 2002) ("statements and 'admissions' made by D'Amico, Dorflinger, and other Board members indicate that PRG and some of the Individual Defendants were aware of a number of accounting inaccuracies by late November 1997 and early 1998; however, contrary to what Plaintiffs allege, none of these comments suggests that the Individual Defendants knew or recklessly disregarded PRG's accounting errors at the time these 'errors' were made"); *Tarcia v. McDermott, Int'l, Inc.*, 2000 WL 1346895, at *9 (E.D. La. Sept. 19, 2000) (holding that "admission" could not support an inference of falsity or scienter because the "quoted statements do not specify when that dramatic increase occurred or even when defendants realized the dramatic increase was a trend") Obviously, any "prepping of the market" that Mr. Post allegedly contemplated could have taken place in early 2013, prior to the actual disclosure. (*See* Mem. at 6.)

## II. Plaintiffs Fail to Plead a Strong Inference of Scienter as to the Dividend Cut

Plaintiffs' argument concerning Defendants' scienter largely mirrors their falsity arguments, with Plaintiffs asserting that the individual Defendants "knew of CenturyLink's impending cash shortfall in the latter half of 2012 and knew (or should have known) that the most important investment aspect of the Company – its dividend – would no longer be maintained." (Opp. at 18.) Plaintiffs make no effort, however, to specify how any particular individual Defendant supposedly learned that the dividend would be cut. Instead, Plaintiffs assert that scienter is supported by the "Individual Defendants' positions as senior executives, the importance of the undisclosed conduct to CenturyLink's core operations and dividend reputation, and by substantial allegations referring to meetings, discussions, and the accounts of numerous high-level CenturyLink employees." (Opp. at 17).

As a threshold matter, it is not enough to simply lump the individual Defendants together and insist that they must have known about the alleged fraud because they were corporate officers and the dividend was important to the Company.[2] *See Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 535 (5th Cir. 2008) ("[T]his court's caselaw makes clear that pleadings of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions with the company.") (internal quotations omitted). (*See* Mem. at 15-16.) Moreover, to the extent that Plaintiffs rely on the same factual allegations to support scienter as they do for falsity – *i.e.*, Mr. Post's supposed statement about conditioning the market, the expiring NOLs, etc. (Opp. at 17-18) – those allegations are deficient for the reasons detailed above.

Plaintiffs do make two additional scienter arguments, but these arguments also do not support the requisite strong inference of fraud. *First*, Plaintiffs claim that Defendants "knew that shareholders would flee upon revelation of the truth regarding the Company's rapidly

---

[2] Plaintiffs' assertion that the Fifth Circuit recently came to a different conclusion in *Spitzberg* is irrelevant. Opp. at 17 n.14. First, it is well-established in the Fifth Circuit that one panel does not have the authority to overrule a previous panel's decision. *SEC v. Janvey*, 404 F. App'x 912, 914 (5th Cir. 2010) (unpublished). Second, in *Spitzberg*, the panel based its holding on the fact that the corporate defendant was an "extremely small" company. *Spitzberg v. Houston Am. Energy Corp.*, 2014 WL 3442515, at *6 n. 13 (5th Cir. July 15, 2014). CenturyLink, in contrast, is the third largest wireline telecommunications company in the United States. (Compl. ¶ 23.)

5

deteriorating state." (Opp. at 1; *see also* 17, 18 (Defendants knew that dividend "would no longer be maintained at the rate the Company was failing").) Plaintiffs' characterization of CenturyLink's business prospects, however, is made with no factual support.[3] Indeed, CenturyLink recently reported operating revenues of $4.54 billion in the second quarter of 2014, which was an *increase* as compared to the second quarter of 2013. *See* Press Release, CenturyLink, Inc., "CenturyLink Reports Strong Second Quarter Results" (Aug. 6, 2014), available at http://ir.centurylink.com/file.aspx?iid=4057179&fid =24744869 (last visited Aug. 29, 2014). The bulk of this revenue was derived from CenturyLink's core businesses, which accounted for revenues of $4.10 billion, a decline of only 0.2% from 2013. (*Id.*) Moreover, on August 29, 2014 (the date of this brief), CenturyLink's stock price closed at $40.99—nearly the same price that it closed at *prior* to the Company's announcement of a dividend cut in February 2013. *See* CTL Historical Prices, available at http://finance.yahoo.com/q/hp?s=CTL (last visited Aug. 29, 2014). Plaintiffs' bald description of CenturyLink's business as "rapidly deteriorating" or "failing" cannot be reconciled with these measures of its current financial performance, of which this Court may take judicial notice. (Mem. at 3 n.2.)

*Second*, Plaintiffs point to insider trades made during the putative class period. Plaintiffs concede, however, that allegations of insider trading cannot by themselves establish the requisite strong inference of scienter. (Opp. at 19 n.16.) Plaintiffs also do not (and cannot) dispute that the Fifth Circuit has squarely held that a plaintiff must plead scienter allegations that are specific to each Defendant (*id.* at 20) – and, therefore, Plaintiffs cannot satisfy their pleading burden with respect to the individual Defendants by alleging suspicious insider trades by other individuals not named as defendants.[4] With regard to Defendant Post, Plaintiffs also make no effort to address the cases from this Circuit holding that (i) trades pursuant to a Rule 10b5-1 plan established

---

[3] The Complaint does not even specifically allege that CenturyLink is a "rapidly deteriorating" or "failing" business, much less does the Complaint allege that Defendants' scienter is somehow established by those supposed facts. *See Tarver*, 2009 WL 700691, at *2.

[4] Plaintiffs' reliance on *Peritus*, a 1999 case from the District of Massachusetts (Opp. at 21), is curious because it obviously cannot trump controlling Fifth Circuit cases specifically construing the PSLRA to require scienter allegations as to each named defendant. (*See* Mem. at 18.)

6

before the class period do not support scienter, but cut *against* it;[5] and (ii) in any event, even *unusual* trades by just *one* insider do not support a strong inference of scienter.  (Mem. at 17.)  In addition, none of Plaintiffs' out-of-circuit cases cast any doubt on the in-circuit precedent cited in the Opening Memorandum establishing that an insider's sale of a small percentage of his holdings – *e.g.*, Mr. Post's sale of 13.5% of his shares – supports an inference of *no* scienter.[6]

When examined holistically, it is clear that the Complaint fails to adequately allege that any of the Defendants (let alone all of them) knew or were severely reckless in not knowing as of August 2012 that the Company would cut its dividend in 2013.  Indeed, the more cogent and compelling inference is that CenturyLink did exactly what it told investors it would do: in early 2013 it considered making changes to its dividend and then decided to cut its dividend as part of a new capital allocation strategy.  (Mem. at 5-6.)

### III. Most of Defendants' Statements About the Dividend are Not Actionable

In the Opening Memorandum, Defendants showed that the Company's statements concerning its future dividend payments are not actionable under the PSLRA's "safe harbor" provisions.  (Mem. at 19-20.)   In response, Plaintiffs contend – citing *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228 (5th Cir. 2009) – that a forward-looking statement is not protected under the safe harbor provisions unless it is made without knowledge the statement was false or misleading.  (Opp. at 13.)  Plaintiffs misstate the PSLRA and Fifth Circuit law.  In accordance with the PSLRA's language, the Fifth Circuit concluded in *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc*., 365 F.3d 353 (5th Cir. 2004), that "[t]he safe harbor has two *independent* prongs: one focusing on the defendant's cautionary statements and the other on the defendant's state of mind."[7]  *Id*. at 371 (emphasis added).  In short, under *Southland* (which is controlling), a

---

[5] Plaintiffs' suggestion that this issue should not be resolved at the pleading stage (Opp. at 20-21) is belied by the in-circuit cases cited in the Opening Memorandum, both of which involved 12(b)(6) motions. (Mem. at 17-18.)
[6] *See* Mem. at 17; Opp. at 19 (*citing, e.g., Fecht v. Price Co*., 70 F.3d 1078, 1084 (9th Cir. 1995) (one insider "halved his total holdings in the Company"), and *In re Suprema Specialties, Inc. Sec. Litig*., 438 F.3d 256, 278 (3d Cir. 2006) (two defendants sold 38% and approximately 50% of their total holdings, respectively).
[7] To the extent that Plaintiffs are suggesting that *Lormand* overruled *Southland*, Plaintiffs are wrong.  A Fifth Circuit panel cannot overrule a previous panel's decision unless sitting *en banc*, or in light of an intervening Supreme Court or *en banc* Fifth Circuit decision.  *See Janvey*, 404 F. App'x at 914.

statement that falls within the first prong of the safe harbor provision is not actionable even if made with actual knowledge that the statement was false. *Id*. at 371-72.

Plaintiffs make a number of other unavailing arguments regarding the Company's forward-looking statements. *First,* Plaintiffs argue that Defendant Ewing's statements during the August 8, 2012 earnings call are not protected by the safe harbor provisions because they were not properly "identified" as forward-looking statements. (Opp. at 14.) It is well established, however, that a forward-looking statement is adequately "identified" when the company provides the safe harbor disclaimer that Plaintiffs acknowledge was made at the outset of the August 8 call. (Mem. at 20 n.20); *see, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, ---F.3d ----, 2014 WL 3451566, at *6 (9th Cir. July 16, 2014) (statement entitled to safe harbor protection because defendant provided disclaimer like one provided here in August 8 earnings call).

*Second*, Plaintiffs contend that the Company's cautionary language was insufficient because the Company's "risk factors" did not mention that "depleting NOLs may affect CenturyLink's dividends." (Opp. at 14-15). This argument is specious. The Company's filings warned investors that, "once our NOLs are fully utilized, we expect that the amounts of our cash flows dedicated to the payment of federal taxes will increase substantially" – *i.e*., once the NOLs were exhausted, there would be substantially less free cash flow available for dividend payments. (Mem. at 5.) This disclosure plainly amounted to "cautionary language," and it is irrelevant, as a matter of law, that it was not specifically identified as a "risk factor."[8] Moreover, even Plaintiffs do not dispute that one of the Company's explicit "risk factors" warned investors that the dividend could be impacted by "changes" in the Company's "cash flows." (Mem. at 20.) That risk factor, viewed in the context of the Company's disclosure about its NOLs,[9] makes clear how the depletion of the NOLs "may affect" the dividend: (i) the depletion would reduce the

---

[8] *See, e.g., In re Clorox Co. Sec. Litig*., 238 F. Supp. 2d 1139, 1145 (N.D. Cal. 2002) (language "not specifically identified as a warning" constitutes "meaningful cautionary language" under the PSLRA so long as it "sound[s] a note of caution"), *aff'd sub nom. Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co*., 353 F.3d 1125 (9th Cir. 2004).

[9] There is no support in common sense or case law for Plaintiffs' suggestion that in determining whether a "risk factor" is "meaningful," it must be assessed in complete isolation of the Company's other disclosures.

amount of available "cash flows," and (ii) any "change" to "cash flows" could impact the dividend. (*Id.*)

*Finally*, Plaintiffs do not dispute (nor could they) that the Company made detailed risk disclosures that the Company could be "expos[ed] to the risk of credit rating downgrades," and that its dividend may be impacted by the Company's "desire to maintain or improve the credit ratings on our debt." (Mem. at 20 & n.20.) Unable to dispute that these risk disclosures disclosed the precise risk in question – *i.e.,* the risk of the Company's debt being downgraded by credit rating agencies – Plaintiffs resort to a far-fetched argument that the cautionary statements were deficient because they "failed to disclose the *sum and substance* of the company's discussions with the credit rating agencies …." (Opp. at 15 (emphasis added).) The law does not require cautionary statements to contain such an exhaustive level of detail, and it is no surprise that Plaintiffs could not cite any case in which a cautionary statement regarding credit rating downgrades was found deficient because it did not contain the "sum and substance" of a company's communications with the credit rating agencies at issue.

## IV.     Plaintiffs' Internal Controls Claims are Entirely Conclusory

The Opposition makes clear that Plaintiffs have no expectation that their internal controls claims will survive a motion to dismiss (nor should they). As set forth in the Opening Memorandum in some detail, the actual confidential witness statements – as opposed to Plaintiffs' mischaracterizations of those statements – do not support any inference that the Company's disclosures about its internal controls were false. (Mem. at 21-23; *compare also* Compl. ¶¶ 29, 36 (actual alleged statements) *with* Compl. ¶ 67(c), (d), and (e) (Plaintiffs' mischaracterizations).) Plaintiffs' only response is to double down on their mischaracterizations by once again falsely asserting that the confidential witnesses made wide-ranging, negative statements about the Company's financial systems and results. (Opp. at 12-13.) Plaintiffs do something similar with respect to scienter: they list out the confidential witness statements and then baldly assert that these statements demonstrate "how and why the Individual Defendants disregarded appropriate internal controls." (Opp. at 21-22.) As explained in the Opening

9

Memorandum, however, the confidential witnesses do not claim that they ever spoke with the individual Defendants about any internal control issues or even that any of the individual Defendants knew or should have known about the problems the witnesses describe. (Mem. at 23-24.) Accordingly, the "how and why" is completely missing from Plaintiffs' allegations; they have thus clearly not pled a strong inference of scienter as to the supposed false Certifications.[10]

Lastly, Plaintiffs do not muster any serious response to Defendants' showing that the Complaint fails to adequately plead loss causation with respect to the Certifications. (Mem. at 24-25.) Plaintiffs assert that the Complaint's bare allegations satisfy the "notice pleading burden" under *Lormand* (Opp. at 24), but even that pleading standard requires, at a minimum, that an alleged corrective disclosure "mention" the subject matter about which the "truth" is supposedly being "revealed." Here, the Company's February 13, 2013 announcement indisputably makes no mention of the Company's internal controls.[11] It therefore cannot be said the "truth became known" about the alleged internal controls problems as a result of the announcement.[12] *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 312-17 (5th Cir. 2008) (per curiam) (affirming *dismissal with prejudice* of securities-fraud class action *solely* on the ground that plaintiffs failed to adequately plead loss causation) (unpublished).

## CONCLUSION

For all of the reasons contained in Defendants' Opening Memorandum and this Reply Memorandum, the Court should dismiss the Complaint in its entirety with prejudice.

---

[10] Plaintiffs make a half-hearted attempt to assert that it was not necessary for the confidential witnesses to have interacted with the individual Defendants. (Opp. at 23 n. 22.) As shown in the Opening Memorandum, however, where Plaintiffs rely solely on the statements of the confidential witnesses to establish Defendants' scienter, the case law absolutely requires some showing that the identified problems were communicated to the relevant corporate officers. (Mem. at 24.) Plaintiffs completely fail to satisfy this pleading burden.

[11] *See, e.g., Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 710 (S.D. Tex. 2013) (granting motion to dismiss in part because alleged corrective disclosure "did not mention" the subject matter of the alleged fraudulent statements) (citing *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 667 (5th Cir. 2004)).

[12] Plaintiffs also attempt to prop up their inadequate loss causation allegations by asserting the Company's February 13, 2013 announcement revealed the Certifications were false with respect to the Company's statements about its dividend. (Opp. at 24-25.) However, not only is this contention insufficient, but it is found nowhere in the Complaint and therefore should be given no weight. (*See* Compl. ¶ 67 (making no reference to the Company's dividend cut as a basis for the alleged falsity of the Certifications)); *Tarver*, 2009 WL 700691, at *2 ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (citations omitted).)

Dated: August 29, 2014
      Washington, D.C().

Respectfully submitted,

COOLEY LLP

  /s/ Lyle Roberts
Lyle Roberts (*pro hac vice*)
George E. Anhang (*pro hac vice*)
Kyle P. Reynolds (*pro hac vice*)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7855
Facsimile: (202) 842-7899
lroberts@cooley.com
ganhang@cooley.com
kreynolds@cooley.com

Dated: August 29, 2014
      New Orleans, LA

JONES WALKER LLP

  /s/ R. Patrick Vance
R. Patrick Vance (#13008)
Tyler J. Rench (#34049)
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100
Telephone: (504) 582-8336
Facsimile: (504) 589-8336
pvance@joneswalker.com
trench@joneswalker.com

*Counsel for Defendants CenturyLink, Inc., Glen F. Post, III, R. Stewart Ewing, Jr., and David D. Cole*

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 29, 2014, I electronically filed the foregoing Reply in Support of Motion to Dismiss with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

Dated: August 29, 2014
        Washington, D.C.

          /s/ *Lyle Roberts*
        Lyle Roberts (*pro hac vice*)
        COOLEY LLP
        1299 Pennsylvania Avenue, Suite 700
        Washington, DC 20004
        Tel: (202) 842-7855
        Fax: (202) 842-7899
        lroberts@cooley.com